The next case today is Calvary Chapel of Bangor v. Janet T. Mills, appeal number 21-1453. Attorney Staver, please introduce yourself for the record to proceed with your argument. Matt Staver on behalf of the appellant Calvary Chapel of Bangor. May it please the court, I respectfully request this court to reverse the order below because the order, the case is not amended. This case has several issues very consistent with the Supreme Court precedent that addressed houses of worship. You have a governor who unilaterally has the authority to issue the executive power for emergencies and change those orders, continues to retain those powers, change those orders unilaterally at her own will, and has not disavowed the past and has not acknowledged that any of these orders are in conflict with the Supreme Court's decisions. The discrimination between religious and secular gatherings, whether it's public or employee, continued despite nearly 10 different decisions by the United States Supreme Court regarding COVID restrictions and houses of worship. The case is not moved and the discriminatory restrictions should be permanently enjoined. The Supreme Court's precedence with regards to COVID restrictions on houses of worship are very instructive and the similarities are here as well. Go ahead, Judge Lynch. I'm sorry. All right. The executive orders are no longer in effect, correct? Correct. How long has it been since they were in effect? What was the date that they were no longer in effect? The very last one would have been December 31, 2021. The executive order with regards to declaring a public emergency expired in June of 2021, June 30, 2021. So, let's go through the exceptions to mootness, okay? So, I take it you are arguing it is capable of repetition. Is that it? That is one, yes, Your Honor, and also- Okay, and I take it your argument there is it is capable of repetition because she has the authority to do it again. Two reasons. Because of the- it's capable of repetition, yet evading review. The orders have to be renewed every 30 days. And even though there's not an emergency order in existence now, the governor still has the authority to unilaterally issue an emergency order, just as she unilaterally had to change orders. Okay, but before you go down that road, Judge Thompson wrote an opinion which effectively demolishes your- just because a government official has the authority that that constitutes an exception to the mootness rule. You would acknowledge that? I acknowledge that that's what the order says, yes. Okay, so let's move on. What is your next ground? Well, I don't think that the capable repetition, yet evading review, is assumed in that particular statement by the order. For example, if you look at the affidavit or the declaration followed by the legal counsel in paragraphs 9, 11, and 12, the legal counsel only said that based upon the Roman Catholic diocese case that was in November of 2020, that the only thing the governor learned was that a 10-person limit might raise strict scrutiny. Indeed, it does raise strict scrutiny. No, Mr. Staver, please, you insist on going into the merits. The issue before us is mootness. So let me back up. As I understood your original argument to us, you said it's not moot because the governor has never acknowledged that she was wrong under the Constitution. I believe you said that. All right. I have never understood that mootness depends on a concession by the defendant that the plaintiff was correct. Where do you get that from? Well, Your Honor, under two different doctrines regarding mootness, the capable of repetition, yet evading review, which was not an issue, by the way, in the First Circuit's Boston Bit case. They did not raise that issue. So that case does not speak to this particular scenario. But the other one with regards to voluntary cessation, voluntary cessation puts the burden on the government to make it absolutely clear that the government will not return to the prior challenged position. That's not quite an accurate statement of the test. It has to be absolutely clear. Something has to be absolutely clear. But I thought what had to be absolutely clear is that it was not reasonable to expect that it would be put back in place. It has to abundantly clear, is what the case law says, that the restrictions will not be reimposed. That's not what the doctrine says. It has to be abundantly or absolutely clear that it is not reasonable to expect that it would be put back in place. That's what I understood it to say. Not that it has to be absolutely clear that it would not be put in place. And I think that that's the case in this situation for reasons that you've got an executive order. You don't have a statute that indicates it would override or change the situation. You've got the executive order has the authority only from one person. Am I right that your position is that so long as there is legal authority to do it, and that legal authority has not been absolutely disavowed, then it's not moot? That's your position? No, not that there's legal authority to do it and that the legal authority to issue an executive order has not been disavowed, but that there's legal authority to issue an executive order and that the challenged orders have not been disavowed or there's been no promise or assurance that they will not be reimposed. And that's where I was going to the declaration of legal counsel. The legal counsel, and even in the brief, by the... How is that consistent with Boston BitLabs? I don't quite see that in your brief. So if you could just work through, given our holding in Boston BitLabs, how is what you just said consistent with that case? There are two First Circuit Court decisions, as you know, regarding this. The one is the Bailey's Campground and it found that it followed Bailey's Campground and which, notwithstanding Bailey's Campground, found that it was moot. And I just want you to explain how, in light of Boston BitLabs, this case is not moot. Because on page 11 footnote 4, Boston Bit states that the plaintiffs do not argue that this is such a case, referring to a case that is capable of repetition yet That clearly was not before the court. It is before the court here. And I think it would have possibly come out with a different outcome had that been before the court in Boston. That's helpful to me. I take it you're saying there's not a ground for distinguishing this case from Boston Bit with respect to the voluntary cessation ground for mootness. Is that right? Right. I think there's a tension between Boston Bit and Bailey's Campground on the voluntary cessation component. But you agree that we're bound by Boston Bit, not Bailey Campground, correct? Well, it's a later case, obviously, in time. So I would say that's correct. But I think your position is that the ground for exception of mootness that's available to this panel, if there is one, is capable of repetition. And you say Boston Bit doesn't address that. That's correct, Your Honor. Does Bailey Campground address capable of repetition? It did not. It addressed the voluntary cessation. I don't recall that it actually addressed the capable of repetition yet evading review. It primarily came down on voluntary cessation. Four minutes remaining. Four minutes. Saying that the governor retained authority, even though the order had changed, had retained authority to reinstitute those and consequently followed some of the Supreme Court decisions that found that it was not moot. One last question from me that just goes back to a point Judge Lynch raised with you, which has to do with the timing and the gap between when the order was on the books, when it was repealed and where we are now. In a capable of repetition setting, insofar as you're appealing to the orders of the Supreme Court in the COVID cases, and I guess the unargued cases, unargued COVID cases that they've issued orders in, in those instances, there was quite rapid fire changing of the orders in real time as the pandemic was going on. Here we're in a rather different situation in which there's been quite a significant time gap plus peaks and valleys of the pandemic in the interim, including spikes in which the order that had been repealed was not put back in place. How should that figure into our calculation in trying to apply the capable of repetition yet evading review analysis? Your Honor, I believe because the shortness of time to have this case fully litigated to this court or to the U.S. Supreme Court on the merits under a 30-day reaffirmation window. I understand that. I guess my question is, isn't there an antecedent question about whether we should even be concerned about that given the indications in the record that although there were spikes, the previously issued order was not then put back in place. So what is the reason to think it would be other than a pretty highly speculative one? Well, I think that you have obviously what happened recently with the executive order regarding healthcare workers in Maine, where those individuals because of the spikes, because of the Omicron, were required to get the COVID-19 vaccination. So I think there's That seems to me to cut against your position, which is it suggests that whatever approach they're going to take in emergencies now are unlikely to involve the kind of gathering restrictions that they put in place when they knew a lot less and when there weren't vaccines. Well, Your Honor, I would understand that argument if that's in fact what the appellees would say, but they won't, and they haven't, and they've defended it. They did say it was highly unlikely that they would do this. Highly unlikely that they would reimpose a 10-person limit. Why? Because Roman Catholic diocese, they said, would likely raise strict scrutiny. That doesn't sound like any assurance at all if they're only focusing on a 10-person limit and that if they reimpose a 10-person limit. Can I ask you one last question, which I hadn't occurred to me until you just raised this? For purposes of your mootness argument, you aren't challenging anything other than a 10-person limit, are you? No, that's not correct, Your Honor. We challenged not only the 10-person limit, but the complaint also said any other discriminatory restriction that would be subsequently placed on churches or houses of worship. But none had been. That would be a rightness issue. No, in fact, they were placed on houses of worship that were discriminatory. I see more than 10-person limits were also. Yes, they started off at that 10-person limit. Then they raised it, but it was still discriminatory. I thought your concern was that you don't want any burden placed on religious gatherings that are different from those placed on other types of gatherings. So you're not challenging the governor's ability to put gathering limitations, just limitations that burden religious institutions. That's correct, Your Honor. Yes, that's correct. And in fact, none of the cases either before the courts have appealed First Circuit, Second Circuit. What is there in the record to suggest at this point that the governor would? Because the governor has not given any assurances that she acknowledges or that she would not go back to those previous discriminatory restrictions. Given what the Supreme Court has said about this at this point, why would we reasonably assume that she would ignore any types of warnings from the Supreme Court? Because it's set forth in three different paragraphs of the declaration and in the appellee's brief. And that is the only thing the governor learned. The only thing is that a 10-person restriction on houses of worship might raise strict scrutiny. In fact, the Supreme Court decisions teach us a lot more than just 10 persons. It goes to what you said, Your Honor, and that is discriminatory restrictions on houses of worship compared to other secular gatherings or meetings would raise strict scrutiny. And that's what elicited these 10 different orders from the Supreme Court one after another. Despite those orders, the governor continued to press forward with those restrictions on churches, eventually relaxing them, eventually withdrawing them. But under no circumstances would we ever have time to fully litigate any one of these orders since the duration is so short. Thank you. Thank you. You reserved two minutes. Yeah, thank you. At this time, Attorney Forster, please unmute your audio and video and introduce yourself on the record to begin. Good morning. May it please the court, my name is Sarah Forster on behalf of Appellee Governor Janet Mills. Your Honors, this case is moot. The court cannot give any effectual relief to Calvary Chapel. Their complaint challenged a 10 person limit that was rescinded almost two years ago. And as you just discussed, at this time, there have been no restrictions on gathering since May 13th, 2021, nor has there been a state of civil emergency, which ended on June 30th, 2021. As of February 12th, 2021, which is before the current motion for a preliminary injunction was filed, churches were treated equal to or better than both other types of gatherings, such as social clubs, or commercial interests, the big box stores, so to speak. Neither the voluntary cessation exception, which I understand counsel conceded, is governed by this court's Boston Bit Labs decision, nor the capable of repetition yet evading review, calls for a different conclusion in this case than that which was reached by the district court. The case is moot. There is nothing left to adjudicate. There is no effectual relief. Could you address the point about whether Boston Bit has anything to say about the capable of repetition exception to mootness? Do you agree that it does not? Of course, your honor. Here's what I believe Boston Bit says about capable of repetition yet evading review. The legal standard for capable of repetition yet evading review is it is too short to be fully litigated and there is a reasonable expectation that the same complaining party will be subject to the same action again. While capable of repetition yet evading review was not directly addressed in Boston Bit, look at the second part of the legal standard. There has to be a reasonable expectation that the same complaining party will be subject to same action again. How is it possible to concede that under voluntary cessation, it is absolutely clear that the conduct could not reasonably be expected to recur? And then look at too short to be fully litigated and there has to be a reasonable expectation that the same complaining party will be subject to the same action again. In other words, the second part of the capable of repetition yet evading review standard is right in line with the voluntary cessation standard and so was addressed in Boston Bit because we're at the same place we were or they were in Boston Bit. We're the only thing remaining. I take it it follows from that language which you're quoting helpfully from the second part of the capable of repetition test that if a party wants to rely on that test, they cannot then be asking for relief here with respect to a restriction that was not identical to the restriction that was put in place. I agree, your honor. That is a problem. And so then just with respect to the record, does that mean anything other than the 10 person gathering restriction that they contended initially was discriminatory is not something that they could be identifying as a potential recurring act? I think your honor that there are two possibilities. One is that there would be a challenge to any order that the governor might put in place in the future addressing houses of worship. But on the other hand, we have a very clear chronology here. At the time that this PI motion was filed, which was on February 18th, 2021, the governor had already issued an executive order that treated houses of worship either equal to or better than both the commercial entities and the other non-commercial gathering entities. So while yes, I believe there is a problem that the complaint was never amended, and I disagree with counsel's assertion that the deciding factor before the Supreme Court, and of course it's difficult because these are being decided as emergency docket cases, was a fixed number. Is it 10? Is it 50? Is it whatever? Where we are now in this case is we have a PI motion filed after the thing that they complain about today in their brief, unequal treatment. It didn't exist when the motion was filed. Well, but I guess I was asking a different question, which is... I'm sorry, Your Honor. I must have misunderstood. Yeah. What I was asking is, regardless of the merits of that argument, what restriction was being challenged originally? So that I can get a handle on it. The 10. And nothing else, in your view. And nothing else, even though during the very first week of this case, when we didn't have a 10, and within four days the state responded and the district court ruled on the TRO, the governor had already announced that it was going from 10 to 50. But your view is, for capable repetition, the only thing that they could be contending under the doctrine would be repeating itself, is the 10-person restriction. That's your take? I think that's correct. But again, it doesn't matter if they're contesting any of it, any of the executive orders, because in the end, as Your Honor stated previously, under Boston BIT, the mere fact that the governor of the state of Maine retains certain core powers, including to declare a state of civil emergency or issue an executive order, is insufficient, because as Judge Thompson said so simply, otherwise you could never have mootness against the government. Ms. Forster, just to draw another distinction, counsel has stressed that it's the discrimination that is, in his view, any differential standard between religion and any other type of commercial or social entity, and the particular challenge was to the 10-person. So in a way, this is a notion that the difference in numerical limitations is what drove the suit. In theory, there could have been other types of discrimination, I imagine, but I take it those never entered this lawsuit at all, and adoption of his broader argument would get us into the problem of whether something other than a numerical limitation could, in fact, be discriminatory, which would strike me as very fact-specific and depending on what that other discriminatory regulation, which never existed, might address. I agree, Your Honor, and just as an example, the difference between the situation in Bailey's campground and the difference in our situation in other words, these are fact-specific determinations that the governor could not say near the beginning of the pandemic when we were trying a whole host of potential ideas to save Maine and to help us make it through the pandemic, that something like a trans-state passage restriction might not come back, this court recognized there wasn't absolute clarity that a conduct could not reasonably be expected to require. Here, we have literally almost two years since the conduct in the complaint, and we have evidence of a clear, concise, consistent pattern by the governor of removing all of the gathering and related limits, and we've changed our pandemic response strategy due to science, not due to this litigation, due to the advent of a vaccine and the ability to control through vaccine. That's what we're seeing, Your Honor, respectfully. Okay, thank you. Five minutes remaining. Judge Thompson, do you have anything further? No. Just one last question. Why is the governor not disavowing the ability to re-institute the 10-person restriction? Well, as a legal matter, Your Honor, I would argue that's not exactly required. Counsel cites no precedent for revocation as a precursor to a determination that something is not capable of repetition yet evading review, and second of all, again, what is it that she would disavow? This complaint challenges a 10-person gathering limit. There's no, to our knowledge, the Supreme Court has never put a cap or given a number as below this is unacceptable. On the other hand, as counsel indicated, she's well aware what the treatment of religious entities versus both commercial and non-religious social or gathering entities, and her executive order reflects that and reflected that in the days prior to this motion being filed, Your Honor. I mean, it seems to me that if there's going to be a 10-person limit, I mean, the issue is not whether there's going to be a 10-person limit, it's whether there's going to be, if science requires that there be a 10-person limit across the board. Yeah. So I'm not really sure what she's supposed to disavow is as long as she treats religion equal to secular gatherings. Exactly, Your Honor, and the governor is well aware and her legal counsel is well aware, as our office is well aware, what the Supreme Court has said in that arena. But I guess I'm just trying, is the governor then positioned that they could not do a 10-person gathering restriction of the kind that was imposed before? No, Your Honor, I believe the issue that the governor is now aware of, that she would have had no reason to be aware of prior to Roman Catholic Diocese in Tandon, is that you have to be careful when carving or deciding what entities are impacted by gathering restrictions, at any number, and that religious entities should not be treated less favorably than their secular counterparts. And again, she's doing this reading carefully both Roman Catholic Diocese in Tandon and knowing that those factual situations were wildly different than what was going on in Maine. The map of New York City and Roman Catholic Diocese, where block to block you could have differential treatment, or the fact that the quote goalposts were moved often in California, was simply not our experience in Maine, Your Honor. If you have no further questions. Thank you. Thank you, Your Honors. Thank you, Attorney Forster. Please mute your audio and video at this time. Attorney Staver, please introduce yourself back on the record to begin. Thank you, Matt Staver for Appellant Cavalry, Chapel Bangor. I want to make two points in because Boston bit was not a free exercise of religion case. It was a free speech. I thought you conceded that it did control with respect to voluntary cessation, just not with capable of repetition. Well, I think it certainly is the most recent, but it doesn't control in this set of facts, certainly, because we have a free exercise argument, different than the free speech argument in that particular case. So we're not conceding that that changed them. How would that change the mootness analysis? Well, I think it changes it because of the pattern that's different between this and the issues in Boston bit. I think it changes it because also the constitutional distinction between religious and secular gatherings that have been consistent throughout. And the second point I would like to make is that the prayer for relief in the complaint never limits the prayer for relief. No, but that's not the relevant question for capable of repetition. It's not what you would like to strike down. It's what the state did. And the state only did, and that was all you challenged. That action is what you're saying could recur. That's the 10-person gathering that you said was discriminatory. That's the only action that could recur because it's the only action that was in place when you challenged it. I respectfully disagree with that with regards to the 10-person. This case was never limited to 10 people, and the prayer for relief never limits it to that. It addresses the broader non-discrimination between secular and religious gatherings, and that was the litigation all the way through. That's what's been briefed. But there had been no order imposed at that time with respect to those other ones. You didn't name them. There were no facts on it. I mean, it's not even clear that there was an imminent harm or any of that with respect to anything other than the 10-person gathering, unless I'm mistaken. There was always imminent harm after that. We actually filed declarations and did a briefing beyond that with regards to when the limits were changed from 10 to 50, and then also when they were changed from five persons per 1,000 feet or 50 people, whichever was greater, which in Calvary's case came out to the same amount since they were still at 10,000. We challenged the distinction between, for example, at Calvary, you could have secular meetings for their feeding, housing, and sheltering program with their residential facility with no limits, but the same people couldn't meet for religious gatherings in the same building in excess of either 10 or 50 or whatever the number might have been. So in the church itself, we always argued and briefed and have a declaration in the record that even in the church itself, there was clear discrimination between religious gatherings and non-religious gatherings because they had the Calvary residential discipleship program, which was 24 men, 24 women, 48 people total. They could come together for counseling, for jobs, for substance abuse, but as soon as they began to engage in religious worship with the staff, it always took them above 50. So they were always in a scenario where they could have one kind of gathering in the same church with the same people, but not another kind of religious gathering in the church with the same people. And that was briefed and that's part of the record. So it was never part of just a 10-person limit and the complaint never limits it to just 10 people. It talks about gathering orders and subsequent orders that would treat discrimination, discriminatorily treat secular versus religious gatherings, and that was consistent whether it was the 10-person or any of the changes thereafter for many, many months, even after the Supreme Court's Roman Catholic Diocese case. So that is not limited to 10. I think your time is up. Do you want to just close with maybe a half minute? Sure. Thank you, Your Honor. I believe the case is not moot because it is capable of repetition yet evading review and that it's not moot because it meets the voluntary cessation, at least from our perspective. They have not carried their burden on the voluntary cessation. Thank you, Your Honors. Thank you. That concludes argument in this case. Attorney Staver and Attorney Forster, you can disconnect from the hearing at this time.